# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHALL DEERWESTER, | 1:09-CV-01128 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. W. SULLIVAN, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections serving an indeterminate sentence of fifteen years to life for his 1990 conviction for second degree murder. See Petition at 2.

On June 6, 2007, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. (HT[1] at 1.) Petitioner attended the hearing and was represented by an attorney. (HT at 1-2.) At the conclusion of the

---

[1] "HT" refers to the hearing transcript that is attached to Exhibit A to Respondent's Answer.

1

1  hearing, the Board denied parole and deferred rehearing for one year. (HT at 84.)

2  On December 21, 2007, Petitioner filed a petition for writ of habeas corpus in the Los
3  Angeles County Superior Court. See Answer, Exhibit A. On March 18, 2008, the petition was
4  denied in a reasoned decision. See Answer, Exhibit B. Petitioner then filed a habeas petition in
5  the California Court of Appeals, Second Appellate District. See Answer, Exhibit C. The petition
6  was summarily denied on August 27, 2008. See Answer, Exhibit D. On October 31, 2008,
7  Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Answer,
8  Exhibit E. On May 13, 2009, the petition was denied. See Answer, Exhibit F.

9  On July 14, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.
10 The petition challenges the 2007 decision of the Board of Parole Hearings denying parole.
11 Petitioner argues he has been denied parole in violation of his constitutional rights. He further
12 contends the State is failing to abide by the provisions of his plea agreement. On September 28,
13 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's
14 answer on October 21, 2009.

## FACTUAL BACKGROUND[2]

16 Retha Terry had been involved in an argument with Petitioner. He had evidently knocked
17 her to the ground breaking her ribs and giving her a black eye. Terry went for medical treatment
18 on October 9, 1987. On October 11, 1987, the police were called as the paramedics arrived at
19 Terry's residence and pronounced her dead. During the polygraph examination, Petitioner
20 admitted to giving Terry too many pain pills. The initial theory was that Petitioner administered
21 the pills in an effort to preserve his inheritance by killing Terry. Ms. Terry had recently changed
22 her will to transfer all of her possessions to Petitioner in return for taking care of her and helping
23 her with errands, household chores, and general maintenance of the home. It was later discovered
24 Terry had never signed the new will. Later, the plea of second degree murder was taken based, in
25 part, on the belief that Petitioner had participated in a mercy killing of Retha Terry.

---

[2] The information is derived from the factual summary as set forth in the parole hearing proceedings. (HT 19-20.)

2

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]

5

1  clearly established that a parole board's decision deprives a prisoner of due process with respect
2  to this interest if the board's decision is not supported by 'some evidence in the record,' or is
3  'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination
4  was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and
5  regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at
6  851. Here, the Court must look to California law and review the record. In reviewing the record
7  and determining whether the "some evidence" standard is met, the Court need not examine the
8  entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass,
9  461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Previous criminal record; and 3) Institutional behavior. (HT at 76-84.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[3] The Board found that the offense was carried out in a

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

6

calculated and dispassionate manner pursuant to § 2402(c)(1)(B). The superior court determined that sufficient evidence supported this finding given that Petitioner administered an overdose of pills to the victim and failed to get her immediate attention despite her complaints of pain. See Answer, Exhibit B. The record shows Petitioner beat the victim, a 73-year old woman a few days prior to her death, and the beating resulted in the victim sustaining a black eye and broken ribs. Thereafter, Petitioner administered an overdose of pain pills and refused to seek immediate medical attention for the victim, apparently in order to acquire assets through the victim's will. The superior court's determination was not unreasonable. The Board also found that the offense was carried out in a manner which demonstrates a callous disregard for human suffering pursuant to § 2402(c)(1)(D). The superior court determined that at least some evidence supported this factor as well, pointing to the fact that Petitioner failed to seek emergency medical assistance despite the elderly victim's suffering. In light of the facts of the offense, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

The Board next found Petitioner's prior offenses were important indicators of unsuitability. 15 Cal. Code Regs. § 2402(c)(2). Petitioner had previously been arrested for obstructing a public peace officer. (HT 38.) Petitioner also used marijuana on a regular basis. He was also arrested and received probation and a fine for driving under the influence. Due to his criminal behavior, he was reduced in rank and then removed from the Marine Corps. The superior court determined that some evidence supported the Board's finding, and the court's determination was not unreasonable.

Finally, the Board noted Petitioner's negative institutional behavior pursuant to 15 Cal. Code Regs. § 2402(c)(6) as an indicator of unsuitability. In support, the Board cited three "CDC-

---

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  128" counseling chronos and four "CDC-115" serious disciplinary reports, the last one being in
2  February 14, 2002, for inappropriate behavior. (HT 80.) Thus, the finding is supported by at least
3  some evidence.
4      The Board also considered the positive factors favoring parole release. The Board
5  commended Petitioner for having obtained his GED. (HT at 79.) The Board also considered his
6  participation in self-help programming. (HT at 79.) However, the Board found Petitioner had
7  only programmed in a limited manner. (HT at 79.) Further, although Petitioner had developed a
8  marketable skill in data processing, it was completed over ten years before and therefore needed
9  to be updated to be of any value to him should he be released. (HT at 79.) Additionally,
10 Petitioner did not have an acceptable employment plan. (HT at 81.) In sum, the Board concluded
11 Petitioner remained an unreasonable risk of danger to the public in light of his crime, his past
12 criminal behavior, his misconduct in prison, and his lack of realistic parole plans. The state court
13 finding that some evidence supported this determination was not unreasonable.
14     In a separate argument, Petitioner contends the Board's refusal to grant parole has
15 violated the terms of his plea agreement. This claim is plainly without merit. It is well-
16 established that a prisoner is entitled to fulfillment of a promise or agreement of the prosecutor if
17 the plea rests in any significant degree on such agreement. Santobello v. New York, 404 U.S.
18 257, 262 (1971). In this case, however, Petitioner understood he was being sentenced to a term of
19 15 years to life, as set forth in the transcript of the plea agreement:

20     [Prosecutor]: You attorney and I have have [sic] agreed that it would be appropriate for
       you to plead to second degree murder, with the sentence being 15 years to life in state
21     prison.
       Is that your understanding?
22
       [Petitioner]: Yes, it is.
23
       ...
24
       [Prosecutor]: All right. For second degree murder, the sentence you will receive is 15
25     years to life in state prison. That means you can serve anywhere from 15 years up to life
       in the state prison.
26     Do you understand that?

27     [Petitioner]: Yes, I do.

28     [Prosecutor]: Upon your release from state prison, if you are released from state prison,

8

|   |   |
|---|---|
| 1 | you will be subject to a parole for a period of years....<br>Do you understand that? |
| 2 |   |
|   | [Petitioner]: Yes, I do. |
| 3 |   |
|   | See Petition, Exhibit B at unnumbered pp. 3, 6-7. |
| 4 |   |

      you will be subject to a parole for a period of years....
      Do you understand that?

      [Petitioner]: Yes, I do.

See Petition, Exhibit B at unnumbered pp. 3, 6-7.

      Further, it is clear from the record that no specific promises with respect to parole dates were made by the prosecutor. In fact, Petitioner was specifically advised that the district attorney had no control over when he would become eligible for parole:

      [Prosecutor]: All right. But you understand the district attorney's office has no influence on when the parole body will release you from state prison?

      [Petitioner]: Yes, I do.

      [Prosecutor]: Are you pleading with that understanding in mind?

      [Petitioner]: Yes, I am.

Id. at 9.

      From the above, it is clear the parole board has not violated the terms of the plea by denying parole. The claim should be rejected.

      In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     The petition for writ of habeas corpus be DENIED; and

2.     Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 12, 2009**                         /s/ Sandra M. Snyder
                                                                 UNITED STATES MAGISTRATE JUDGE